# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

JASON E. SKAGGS,

      :

    Petitioner,                                           Case No. 3:11-cv-323

      :                           District Judge Timothy S. Black

    -vs-                                               Magistrate Judge Michael R. Merz

MICHAEL SHEETS, Warden,
Warren Correctional Institution,

      :

    Respondent.

## REPORT AND RECOMMENDATIONS

        Petitioner Jason E. Skaggs brought this habeas corpus action *pro se* under 28 U.S.C. § 2254 to obtain release from his imprisonment in Respondent's custody.  Petitioner was sentenced to thirty-four years imprisonment upon his conviction in the Clark County Common Pleas Court on three counts of aggravated vehicular homicide and two counts of aggravated vehicular assault.

        The case is before the Court for initial review under Rule 4 of the Rules Governing § 2254 Cases which provides in pertinent part "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner."

    Mr. Skaggs pleads three grounds for relief:

> **Ground One:** The evidence that appellant had a seizure prior to the crash was overwhelming and does not support a finding of recklessness.
>
> **Ground Two:** Appellant was deprived of his right to due process of

>law under Federal and State Constitutions as a result of misconduct by the prosecution.
>
>**Ground Three:** The trial court erred in its instructions to the jury regarding recklessness to appellant's prejudice.

(Petition, Doc. No. 1-2, PageID[1] 18-21.)

After his conviction, Mr. Skaggs took a direct appeal to the Second District Court of Appeals, raising as assignments of error the same claims he makes here. The Court of Appeals decided each of those assignments of error on the merits. *State v. Skaggs*, 185 Ohio App. 3d 752, 2010 Ohio 302, 925 N.E. 2d 676 (Ohio App. 2nd Dist. 2010).[2] When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Brown v. Payton,* 544 U.S. 133, 134 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362 (2000). The objective reasonableness of the Court of Appeals decision on the merits of these claims is discussed below with respect to each Ground for Relief.

## Ground One: Insufficient Evidence

---

[1] Effective with the installation of version 4.1.1 of the software, the Court's electronic filing system (CM/ECF) automatically affixes a distinctive page number (shown in the upper right-hand corner as PageID) to each page of each filed document.

[2] The Ohio Supreme Court declined discretionary review, so the Court of Appeals opinion is the last reasoned opinion of the state courts.

In his first Ground for Relief, Mr. Skaggs claims his conviction is not supported by sufficient evidence because of the allegedly overwhelming evidence that he had a seizure before the fatal crash.

As to this claim, the Court of Appeals held:

> FIRST ASSIGNMENT OF ERROR
>
> [**P5] "THE JUDGMENT OF THE TRIAL COURT IS AGAINST THE WEIGHT AND SUFFICIENCY OF THE EVIDENCE AT TRIAL."
>
> [**P6] R.C. 2901.21(A) provides that a person is not criminally liable unless "(1) [t]he person's liability includes either a voluntary act, or an omission to perform an act or duty that the person is capable of performing," and "(2) [t]hat the person has the requisite degree of culpability for each element as to which a culpable mental state is specified by the section defining the offense." R.C. 2901.21(A) provides, in pertinent part: "Every person accused of an offense is presumed innocent until proven guilty beyond a reasonable doubt, and the burden of proof for all elements of the offense is upon the prosecution."
>
> [**P7] HN2In order to prove violations of R.C. 2903.06(A)(2)(a) and 2903.08(A)(2)(b), the State was required to prove, beyond a reasonable doubt that, while operating his motor vehicle, Defendant recklessly caused death or serious physical harm to others. "Recklessly" is a culpable mental state defined by R.C. 2901.22(C), which states:
>
> [**P8] "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."
>
> [**P9] Defendant argues that his convictions are not supported by legally sufficient evidence and are against the manifest weight of the evidence because the evidence presented at trial establishes that Defendant had an epileptic seizure in the moments prior to the crash, and therefore the evidence does not support a finding that Defendant

acted recklessly in causing death or serious physical harm to others.

[**P10] A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the guilty verdict as a matter of law. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 1997 Ohio 52, 678 N.E.2d 541. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492:

[**P11]   "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

[**P12] Defendant offered evidence at trial to support his argument that he lacked the culpable mental state of recklessness because his conduct was instead the result of an epileptic seizure. Such evidence would also show that his conduct was not the result of a voluntary act, a requirement for criminal liability. R.C. 2901.21(A). Defendant argues on appeal that because the evidence demonstrates that he did not apply his brakes, slow down, or otherwise attempt to avoid the stopped vehicles ahead of him, the only reasonable conclusion is that Defendant did not perceive the stopped vehicles because he suffered an epileptic seizure, much like one he had in October 2006 in the presence of Simon Sweet. Defendant argues that the testimony of the State's expert, Dr. Moore, describing a postictal state of confusion and agitation following a seizure, is consistent with the testimony of the State's eyewitness, Julia Skrlac, describing Defendant's behavior in the moments after the crash while Defendant was trapped in his vehicle.

[**P13] The evidence presented at trial demonstrates that Defendant suffers from epilepsy and had been prescribed medication by his doctor for that seizure disorder. Defendant had a valid driver's license at the time of the crash, but his license was subject to a medical restriction that required Defendant to submit a form to the BMV every year, signed by his physician and stating that his medical condition is under control. Defendant's doctor had the authority to revoke/cancel Defendant's driving privileges for medical reasons.

Defendant experienced a seizure in October 2006, which he did not report to his doctor.

[**P14]  Dr. James Moore, the State's neurology expert, testified at trial regarding epilepsy, various types of seizures, and the postictal symptoms a person would experience after coming out of a seizure. Dr. Moore opined that Defendant did not have a seizure prior to the crash because a person experiencing a seizure would not be able to navigate the stretch of roadway Defendant drove, responding to the curves and passing other vehicles at a high rate of speed as Defendant did. Dr. Moore further testified that Defendant's behavior immediately following the crash in asking whether he caused the accident is inconsistent with a postictal state because it demonstrates insight and Defendant's grasp of the situation and his environment.

[**P15]  Candy Rinehart, a nurse who assists epileptic patients, stopped at the crash scene to assist. Rinehart testified that Defendant did not exhibit any postictal behaviors. Rather, Defendant's conduct demonstrated that he was scared and in shock. Defendant's conduct in using his cell phone and talking clearly immediately after the crash was also inconsistent with postictal behavior. Paramedics who treated Defendant at the scene observed no signs that Defendant had suffered a seizure, and no postictal behavior.

[**P16]  Construed in a light most favorable to the State, this evidence is clearly sufficient to permit a rational trier of facts to find that Defendant did not have a seizure just prior to the crash. Moreover, Defendant's conduct in driving at an extremely high rate of speed on a well-traveled and curving road during the evening rush hour and approaching a busy intersection full of stopped vehicles, at ninety-six miles per hour, which greatly increased both the likelihood of a crash and the severity of injuries that would likely result, unquestionably is sufficient to demonstrate criminal recklessness.

[**P17]  Recognizing that the charged offenses require proof that Defendant caused the deaths and serious physical harm recklessly, not necessarily that he operated his vehicle recklessly, the State argues that a finding that Defendant suffered some type of seizure just prior to the crash does not preclude a finding that Defendant acted recklessly.

[**P18]  Evidence presented by the State demonstrates that Defendant failed to report to his doctor a seizure he suffered in October 2006, which was witnessed by Simon Sweet, and that had he

reported that incident, Defendant's doctor would have required him to stop driving for six months and would not have signed a medical release necessary for the driver's license Defendant was issued. Defendant was aware that his driver's license required yearly medical approval by his doctor. In other words, had Defendant reported his October 2006 seizure to his doctor, he would not have been driving on March 8, 2007, when this crash occurred. Furthermore, tests performed on blood samples taken from Defendant after the crash revealed that certain medications his doctor had prescribed to control his seizure disorder, Keppra and Depakote, were not in Defendant's system. Failure to take his prescribed medications increased the risk that Defendant would have a seizure.

[**P19] Defendant argues that his failure to report his October 2006 seizure to his doctor does not constitute recklessness because he was not then aware that he was going to have a seizure, that the timing of seizures cannot be predicted, and therefore he did not perversely disregard a known risk. That risk, however, is precisely why doctors are authorized to revoke the driving privileges of epileptics who have recently had a seizure, because until a sufficient period of "seizure free" time has passed, the person poses a risk to others using the roadways. The seizure free time period allows for adjustments in medication and an assessment of the risk of a future seizure. The evidence the State offered was sufficient to support a finding that, being aware of that fact, Defendant perversely disregarded a known risk when he operated his vehicle after having failed to report his prior seizure to his doctor and/or take his prescribed medication.

[**P20] Viewing the totality of this evidence in a light most favorable to the State, as we must, a rational trier of facts could find all of the essential elements of aggravated vehicular homicide and aggravated vehicular assault proven beyond a reasonable doubt, including that Defendant had acted recklessly. Defendant's convictions are supported by legally sufficient evidence.

*State v. Skaggs, supra,* ¶¶ 5-20.

An allegation that a verdict was entered upon insufficient evidence, such as Petitioner makes in his First Ground for Relief, states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v.*

*Sowders,* 894 F.2d 792, 794 (6th Cir. 1990)(en banc).  In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt.  *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . .  This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset*, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007).  This rule was adopted as a matter of Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259, 574 N.E. 2d 492 (1991).  Of course, it is state law which determines the elements of offenses;  but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt.  *In re Winship, supra.*

The Second District Court of Appeals applied the correct federal constitutional standard from *Jackson v. Virginia* as it has been previously enunciated in Ohio case law, such as *Jenks, supra.*  The question before this Court, then, is whether that application was objectively reasonable.

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury

> verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008).

Petitioner contends that, because the evidence he had a seizure prior to the crash is "overwhelming," it cannot be true that he was reckless. The Court of Appeals approached this claim from two possible views of the evidence.

The first view is that driving at ninety-six miles an hour is itself reckless. The Court of Appeals noted expert testimony from the State's neurology expert that Petitioner's behavior immediately after the crash and his ability to navigate a curving road at all were inconsistent with his claim of a seizure. There was further eyewitness expert testimony from a nurse familiar with epileptic patients that Petitioner did not demonstrate postictal behaviors after the crash. Paramedics who treated Petitioner at the scene made consistent observations. All of this testimony – which the jury heard and on which the Court of Appeals relied – undermines Petitioner's claim that the evidence that a seizure caused the crash was overwhelming.

An alternative view of the evidence, which the Court of Appeals also credited, was that it was medically proven that Petitioner had not taken his anti-seizure medication and that Petitioner knew he was subject to seizures which could cause him to lose control of the car if her drove without

-8-

it. Moreover, he was under an obligation to inform his physician if he had a seizure, but had not done so after the seizure in October, 2006.

It is of course state law that determines the meaning of "recklessness" in the state criminal code. The Court of Appeals here plainly determined that Petitioner's conduct met that standard in either one of two possible ways, both of which were supported by ample evidence.

This Court cannot say that the Court of Appeals determination was objectively unreasonable. Therefore Petitioner's first claim for relief is without merit.

### Ground Two: Prosecutorial Misconduct

In his second Ground for Relief, Petitioner asserts that he was deprived of due process by the prosecutor's misconduct. This was his second assignment of error on direct appeal which the Court of Appeals decided as follows:

> SECOND ASSIGNMENT OF ERROR
>
> [**P30] "APPELLANT WAS DEPRIVED OF HIS RIGHT TO DUE PROCESS OF LAW UNDER FEDERAL AND STATE CONSTITUTIONS AS A RESULT OF MISCONDUCT BY THE PROSECUTION."
>
> [**P31] Defendant argues that he was deprived of a fair trial due to prosecutorial misconduct.
>
> [**P32] The test for prosecutorial misconduct is whether the prosecutor's remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused. *State v. Bey*, 85 Ohio St.3d 487, 493, 1999 Ohio 283, 709 N.E.2d 484. The focus of that inquiry is on the fairness of the trial, not the culpability of the prosecutor. *Id.*
>
> [**P33] Generally, prosecutors are entitled to considerable latitude

in opening and closing arguments. *Maggio v. Cleveland* (1949), 151 Ohio St. 136, 84 N.E.2d 912; *State v. Ballew,* 76 Ohio St.3d 244, 1996 Ohio 81, 667 N.E.2d 369. A prosecutor may freely comment in closing argument on what the evidence has shown and what reasonable inferences the prosecutor believes may be drawn therefrom. *State v. Lott* (1990), 51 Ohio St.3d 160, 165, 555 N.E.2d 293; *State v. Root*, Montgomery App. No. 20366, 2005 Ohio 448. In determining whether the prosecutor's remarks were prejudicial, the State's argument must be viewed in its entirety. *Ballew*.

[**P34] Defendant argues that the prosecutor, despite knowing that the evidence supported the theory that the crash was caused by an epileptic seizure, introduced irrelevant and prejudicial evidence concerning Defendant's angry demeanor and rage in the minutes preceding the crash. Specifically, the State introduced evidence of Defendant's anger and rage while he was at a pawn shop and then at a Rally's drive through restaurant. According to Defendant, the State introduced this evidence to outrage the jurors and create hostility toward Defendant.

[**P35] As we discussed in overruling the previous assignment of error, the evidence presented at trial did not necessarily prove that Defendant had a seizure in the moments before the crash. Furthermore, the State was not precluded from arguing that Defendant was motivated to act as he did by rage or anger. The evidence the State presented concerning Defendant's behavior and his angry demeanor and rage while at a pawn shop and at Rally's in the minutes before the crash occurred, was relevant and probative of the State's theory that Defendant was operating his vehicle in a rage when he crashed into the stopped vehicles at the intersection of Moorefield and Urbana roads, and that his driving was not the result of accident, that is, a seizure. Evid.R.404(B). Defendant's angry mood and rage could explain his driving in a reckless manner at a grossly excessive speed, and such a state of mind could explain why Defendant failed to recognize that the cars ahead of him were stopped. The State's contention that Defendant acted out of a sense of rage may lack plausibility, because it assumes Defendant also put his own life at risk. However, introduction of this evidence was neither improper nor misconduct on the part of the prosecutor.

[**P36] Defendant additionally complains of prosecutorial misconduct during closing argument. The prosecutor first noted that the jurors during the course of the trial had met the people affected by this crash. The prosecutor then stated: "[i]f each and everyone of you

> are honest with yourself, you have probably been [a]ffected because every time you're stopped at a traffic light from now on, your eyes are going to be looking in the rearview mirror. You're going to be thinking about this in the back of your mind." (T. 2,696).
>
> [**P37] Defendant argues that the prosecutor's comment was a personal appeal to the jurors designed to frighten them into finding Defendant guilty. Defendant failed to object to the prosecutor's remark, which waives all but plain error. *State v. Braden*, 98 Ohio St.3d 354, 2003 Ohio 1325, 785 N.E.2d 439. Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise. *State v. Long* (1978), 53 Ohio St.2d 91, 372 N.E.2d 804.
>
> [**P38] The prosecutor's remark was improper. It suggested that the jurors should convict Defendant to prevent him from harming them, if he was acquitted. However, in light of the evidence presented, we cannot say that but for this remark Defendant would have been acquitted of these offenses. The remark therefore does not rise to the level of plain error.
>
> [**P39] Defendant's second assignment of error is overruled.

*State v. Skaggs, supra*, ¶¶ 30-39.

On habeas corpus review, the standard to be applied to claims of prosecutorial misconduct is whether the conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process," *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *Darden v. Wainwright,* 477 U.S. 168 (1986); *Bates v. Bell*, 402 F.3d 635, 640-41 (6th Cir. 2005); *Kincade v. Sparkman*, 175 F.3d 444 (6th Cir. 1999) or whether it was "so egregious as to render the entire trial fundamentally unfair." *Cook v. Bordenkircher*, 602 F.2d 117 (6th Cir. 1979); *accord Summitt v. Bordenkircher*, 608 F.2d 247 (6th Cir. 1979), *aff'd sub nom*, *Watkins v. Sowders*, 449 U.S. 341 (1981); *Stumbo v. Seabold*, 704 F.2d 910 (6th Cir. 1983). The court must first decide whether the complained-of conduct was in fact improper. *Frazier v. Huffman*, 343 F.3d 780 (6th Cir. 2003), *citing United States v. Carter*, 236 F.3d 777, 783 (6th Cir. 2001). A four-factor test is then applicable to

any conduct the Court finds inappropriate: "(1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and whether the evidence against the defendant was strong." *Id.* The court must decide whether the prosecutor's statement likely had a bearing on the outcome of the trial in light of the strength of the competent proof of guilt. *Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982). The court must examine the fairness of the trial, not the culpability of the prosecutor. *Serra v. Michigan Department of Corrections,* 4 F.3d 1348, 1355 (6th Cir. 1993)(*quoting Smith v. Phillips*, 455 U.S. 209, 219 (1982). In *Serra*, the Sixth Circuit identified factors to be weighed in considering prosecutorial misconduct:

> In every case, we consider the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury, and the strength of the competent proof to establish the guilt of the accused.

*Id.,* at 1355-56 (quoting *Angel*, 682 F.2d at 608). The misconduct must be so gross as probably to prejudice the defendant. *Prichett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997), *cert. denied*, 118 S. Ct. 572 (1997); *United States v. Ashworth,* 836 F.2d 260, 267 (6th Cir. 1988). Claims of prosecutorial misconduct are reviewed deferentially on habeas review. *Thompkins v. Berghuis,* 547 F.3d 572 (6th Cir. 2008), citing *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004).

The standard employed by the Court of Appeals in evaluating this claim of prosecutorial misconduct is not contrary to clearly established federal law. Nor was the application of that law an objectively unreasonable application of clearly established federal law. As to the first claim of arguing irrelevant evidence, the Court of Appeals explained why that evidence was not irrelevant.

As to the second claim that the remarks attempting to persuade the jurors to think of

-12-

themselves as threatened by Petitioner, the Court found those remarks improper, but applied a plain error standard in reviewing them because there had been no objection. This Court should not reach the merits of this second claim of prosecutorial misconduct because Petitioner procedurally defaulted in presenting it to the Ohio courts by failing to object.

The procedural default defense in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones,* 238 F. 3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional right he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107 (1982). Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review. *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle v. Isaac*, 456 U.S. 107 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia,* 372 U.S. 391 (1963).

The Sixth Circuit Court of Appeals requires a four-part analysis of a possible procedural default. *Eley v. Bagley*, 604 F.3d 958, (6th Cir. 2010) *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th

Cir. 1998), citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407 (2001);.

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
>
> . . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin,* 785 F.2d, at 138.

Applying the *Maupin* analysis, this Court notes that Ohio has a contemporaneous objection rule that parties must preserve errors for appeal by calling them to the attention of the trial court at a time when the error could have been avoided or corrected, set forth in *State v. Glaros*, 170 Ohio St. 471, 166 N.E.2d 379 (1960), paragraph one of the syllabus; *see also State v. Mason*, 82 Ohio St. 3d 144, 162, 694 N.E.2d 932 (1998).

That rule was enforced in this case when the Court of Appeals applied only plain error review. Reservation of authority to review in exceptional circumstances for plain error is not sufficient to constitute application of federal law. *Cooey v. Coyle,* 289 F.3d 882, 897 (6th Cir. 2002);

*Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000). A state appellate court's review for plain error is enforcement, not waiver, of a procedural default. *Jells v. Mitchell,* 538 F.3d 478, 511 (6th Cir. 2008); *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006); *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005); *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005); *Hinkle v. Randle,* 271 F. 3d 239 (6th Cir. 2001), citing *Seymour v. Walker*, 224 F. 3d 542, 557 (6th Cir. 2000)(plain error review does not constitute a waiver of procedural default); *accord, Mason v. Mitchell,* 320 F.3d 604 (6th Cir. 2003).

The Sixth Circuit has repeatedly held that Ohio's contemporaneous objection rule meets the third prong of Maupin: it is an adequate and independent state ground. *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007); *Biros v. Bagley,* 422 F.3d 379, 387 (6th Cir. 2005); *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003), *citing Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), *citing Engle v. Isaac,* 456 U.S. 107, 124-29 (1982). *See also Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000). *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir.), *cert. denied*, 131 S. Ct. 185 (2010).

Petitioner's second Ground for Relief is in part without merit and in part barred by procedural default. It should be dismissed with prejudice.

## Ground Three: Jury Instruction Error

In his third Ground for Relief, Petitioner asserts that the trial court's instruction to the jury on recklessness was in error. This claim was Petitioner's third assignment of error on direct appeal which the Court of Appeals decided as follows:

THIRD ASSIGNMENT OF ERROR

[**P40] "THE TRIAL COURT ERRED IN ITS INSTRUCTIONS TO THE JURY REGARDING RECKLESSNESS, TO APPELLANT'S PREJUDICE."

[**P41] Defendant argues that the trial court erred in instructing the jury on recklessness because it improperly elaborated on the Ohio Jury Instructions definition by including a comment on grossly excessive speed.

[**P42] In a criminal case, if requested special instructions to the jury are correct statements of law, pertinent, and timely presented, they must be included, at least in substance, in the general charge. *Cincinnati v. Epperson* (1969), 20 Ohio St.2d 59, 253 N.E.2d 785.

[**P43] The trial court instructed the jury on the culpable mental state of "recklessness" in accordance with the Ohio Jury Instructions definition, CR 417.17, which adopts the language used in R.C. 2901.22(C). Defendant had timely requested in writing, in accordance with Crim.R. 30, that the trial court instruct the jury that "proof of excessive speed alone is insufficient to constitute criminal recklessness." The trial court gave Defendant's requested instruction, but, over Defendant's objection, elaborated by explaining that grossly excessive speed is one factor that may be considered along with all of the other evidence in determining whether Defendant acted recklessly. That additional language was requested orally by the State. The court's complete instruction on recklessness is as follows:

[**P44] "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist.

[**P45] "Risk means a significant possibility, as contrasted with a remote possibility, that a certain result may occur or that certain circumstances may exist.

[**P46] "Excessive speed alone is insufficient to constitute criminal recklessness. Grossly excessive speed which presents a clear safety hazard to other users of the road is one of the factors to consider along with all other evidence regarding all of the circumstances of the

> event." (T. 2,825).
>
> [**P47] Contrary to Defendant's argument, the trial court's instruction does not imply or invite the jury to find that grossly excessive speed, alone, would support a finding of criminal recklessness, regardless of any evidence that Defendant had a seizure. Rather, it is one factor to consider, along with all of the other evidence, in determining recklessness. That is a correct statement of the law, and more complete and fairly balanced than the instruction requested by Defendant. This court has repeatedly held that grossly excessive speed, when combined with other factors, will support a finding of recklessness. *State v. Moore*, Montgomery App. No. 22904, 2009 Ohio 3766; *State v. Amerson* (Sept. 18, 1998), Montgomery App. No. 16529, 1998 Ohio App. LEXIS 4360. We see no abuse of discretion on the part of the trial court in instructing the jury on recklessness as it did.
>
> [**P48] Defendant's third assignment of error is overruled. The judgment of the trial court will be affirmed.

*State v. Skaggs, supra,* ¶¶ 40-48.

The question of whether a jury instruction is or is not a proper statement of state law is, of course, a state law question on which we are bound to follow the decision of the state courts. *Railey v. Webb*, 540 F.3d 393 (6th Cir. 2008), quoting *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005)("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."), *Maldonado v. Wilson*, 416 F.3d 470 (6th Cir. 2005); *Vroman v. Brigano*, 346 F.3d 598, (6th Cir. 2003); *Caldwell v. Russell*, 181 F.3d 731, 735-36, (6th Cir. 1999); *Duffel v. Dutton,* 785 F.2d 131, 133 (6th Cir. 1986). This Court is therefore bound by the Court of Appeals' decision that the instruction on recklessness is a correct statement of Ohio law. We can only grant relief if the conviction is the result of a violation of federal, not state, law.

The federal question presented by Petitioner's third claim is whether the jury instruction

-17-

denied Petitioner a fair trial. In general, jury instructions violate a petitioner's right to a fair trial when they are contrary to state law and undermine the reliability of a verdict. See *Kordenbrock v. Scroggy*, 919 F.2d 1091, 1120-21(6th Cir. 1990)(en banc). Here the Court of Appeals determined the instructions did not violate Ohio law and this Court cannot say they rendered the verdict unreliable. There is no deprivation of due process in allowing a jury to consider evidence that a person drove at speeds over ninety miles an hour on a curving road amidst traffic in determining whether he behaved recklessly.

Therefore Petitioner's third Ground for Relief should be dismissed on the merits.

## Conclusion

Based on the foregoing analysis under Rule 4, it is respectfully recommended that the Court conclude under Rule 4 that the Petition should be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied leave to appeal *in forma*

*pauperis* and any requested certificate of appealability.

September 9, 2011.

s/ **Michael R. Merz**<br>United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).

J:\Documents\Skaggs Habeas R&R.wpd